UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MARK ANTHONY GILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CAUSE NO. 3:06-CV-0061 JVB |
| ) | |
| DR. MYERS, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Mark Gill, a prisoner committed to the Indiana Department of Correction ("IDOC"), submitted a complaint under 42 U.S.C. § 1983, alleging that Miami Correctional Facility officials violated his federally protected rights. The Court screened the complaint pursuant to 28 U.S.C. § 1915A, dismissed several defendants and claims, and allowed Mr. Gill to proceed against Dr. Myers and Correctional Officer Chesley[1] on his Eighth Amendment claims against them. Mr. Gill later amended his complaint to add claims against Health Care Administrator Chad Barr.

Defendants Myers and Chesley filed a motion for summary judgment pursuant to FED. R. CIV. P. 56. on the question of whether Mr. Gill exhausted his administrative remedies as required by 42 U.S.C. § 1997e(a). Mr. Gill has responded to the summary judgment motion.

> Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Although the moving party must initially identify the basis for its contention that no genuine issue of material fact exists, the nonmoving party cannot rest on his pleadings, but must produce his own evidence. *Hughes v. Joliet Correctional Ctr.*, 931 F.2d 425, 428 (7th Cir. 1991). Rule 56(e) requires that the nonmoving party who bears the burden of proof on an issue for trial allege specific facts showing that there

---

[1] The complaint names this defendant as Officer Chelsey. But in his answer, this defendant states that his correct name is Alan Chesley.

> is a genuine issue for trial by his own affidavits or by the depositions, answers to interrogatories, and admissions on file. *Celotex Corp.*, 477 U.S. at 324.
> 
>    . . . In considering whether any genuine issues of material fact exist, we view the record and extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party. However, the nonmoving party "must do more than simply show that there exists some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Only disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

*McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996).

Pursuant to 42 U.S.C. § 1997e(a), prisoners must utilize any available prison grievance procedure before they may file a § 1983 claim regarding conditions of confinement. *Booth v. Churner*, 532 U.S. 731 (2001); *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 537 (7th Cir. 1999). Section 1997e "applies to 'all inmate suits, whether they involve general conditions or particular episodes, and whether they allege excessive force or some other wrong.'" *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002), *quoting Porter v. Nussle*, 534 U.S. 516, 122 (2002). "For a prisoner to exhaust his remedies within the meaning of § 1997e(a), he must 'file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *Burrell v. Powers,* 431 F.3d. 282, 285 (7th Cir. 2005), quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Exhaustion of administrative remedies is a condition precedent to suit in federal court. *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d at 335.

Although not depriving the courts of subject-matter jurisdiction, the comprehensive administrative exhaustion requirement compels dismissal of any claim in which an available administrative remedy has not been exhausted. *Massey v. Wheeler*, 221 F.3d 1030 (7th Cir. 2000). Dismissal of a complaint pursuant to 28 U.S.C. § 1997e(a) should be without prejudice. *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d at 534.

In support of their summary judgment motion, defendants Myers and Chesley submit the affidavit of Grievance Specialist Amy Clark, a copy of the IDOC grievance policy in effect during

2

the relevant period, and copies of four first step grievances filed by Mr. Gill. These submissions establish that the IDOC grievance policy required prisoners to initiate the grievance process by filing a step one grievance within forty-eight working hours following the occurrence of the incident. A grievance specialist was to investigate the grievance and respond. If the grievance was not resolved at an early stage, there were a total of five steps to complete the grievance procedure. Mr. Gill did not appeal the initial denial of any of his grievances through all five steps provided by the IDOC policy. The moving defendants assert that Mr. Gill's failure to appeal the denial of his grievances through all five steps requires the dismissal of his claims against them pursuant to § 1997e(a).

Because the defendants met their initial obligation under Fed. R. Civ. P. 56, the burden shifts to Mr. Gill to come forth with evidence sufficient that, if viewed as fully in his favor as reasonable, would allow a factfinder to decide in his favor the question of whether he exhausted his administrative remedies in his claims against defendants Myers and Chesley. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Mr. Gill submits a statement, sworn under penalty of perjury, that responds to Amy Clark's affidavit point by point. In his statement, Mr. Gill states that he believes he filed six step one grievances[2] (DE 42 ¶ 25), all of which were denied at the initial stage. He states that he appealed the initial denial of his grievances, but concedes that he did not appeal any of them through the final step of the appeals process. Mr. Gill states that he did not appeal these grievances to the final step because he received a response in intermediate steps that resolved his complaints to his satisfaction. (DE 42 ¶¶ 29, 33, 36, and 39).

---

[2] In addition to the four grievances submitted by the moving defendants, Mr. Gill submits two grievances filed in 2006. But because these additional grievances were filed after he filed the complaint in this case, the court cannot consider them in determining whether he exhausted his administrative remedies before filing his complaint.

3

In response to the moving defendants' argument that he did not exhaust his grievance remedies because he did not appeal any of them past the third step, Mr. Gill responds that "Plaintiff differ! According to policy #00-02-301, Chp. 1-A, Plaintiff would be abusing the grievance procedure if Gill kept filing grievances when Gill received an answer back that did resolved (sic) Gill's complaints, to Gill's satisfaction . . .." (DE 42 ¶ 42). The portion of the grievance policy cited by Mr. Gill defines abuse of the grievance program as consisting of "a grievant's deliberate flooding of the grievance system with numerous or repetitive complaints or grievances and/or *continuing through the entire appeal process with grievances that were resolved in the grievant's favor at a lower level*." (Docket #26-2 at p. 1) (emphasis added).

Mr. Gill argues that he did not need to complete the five step procedure in any of his grievances because he got responses that resolved his complaints before he got to the final step. In her affidavit, Amy Clark states that "if the complaint is not resolved in a manner that satisfies the offender, he may pursue the grievance through additional steps." (DE 26-1 at ¶ 15). This is consistent with the portion of the grievance policy cited by Mr. Gill, which states that a prisoner would be abusing the system if he continued to appeal in a grievance that was resolved in his favor at a lower level. This Court has seen at least one case in which the prisoner received relief at an early stage of the grievance procedure, and when he attempted to appeal to another step was told in writing by the grievance specialist that he could not appeal further because his grievance had already been resolved favorably. Thus, under the IDOC grievance policy in effect in 2005, if any of Mr. Gill's grievances were resolved in a manner that satisfied him, he need not — indeed could not — pursue the grievance through additional steps before seeking damages for his injuries, a remedy not available in the grievance procedure.

Mr. Gill alleges that he is a paraplegic with a bullet lodged in his back and that Dr. Myers discontinued the whirlpool treatments he had been prescribed to ease his pain "not for medical reasons, but upon the request of custody staff," knowingly causing him "serious pain and discomfort." (Complaint at p. 3). Mr. Gill alleges that on September 13, 2005, Correctional Officer Chesley was deliberately indifferent to his serious medical needs when he prevented a nurse from assisting him to get in and out of the whirlpool. Mr. Gill asserts that because he is a paraplegic, he fell and "sustained injury of a serious nature resulting from that fall." (Complaint at p. 3).

The defendants's submissions establish that Mr. Gill filed four step one grievances before he filed his complaint. In grievance #2005-7-285, dated July 13, 2005, Mr. Gill asserted that he was in constant pain and wanted to have "an appointment with the neurologist! So that I can stop hurting." (DE 26-3). In grievance #2005-9-54, dated September 1, 2005, he asserted that he was "being denied adequate pain medication." (DE 26-4). In grievance #2005-9-269, dated September 6, 2005, he alleged that his medical "treatments are now not being done twice a day like its suppose[d] to be done . . .. I am now doing my treatment myself because the nurse doesn't have enough time or help to do it . . .. Plus I am not receiving any of my prescribed medication . . .." (DE 26-5) (emphasis in original). In grievance #2005-9-655, dated September 21, 2005, Mr. Gill asserted that he "fell getting into the whirlpool tub. My back is really hurting back, and I need help getting in the whirlpool and out of it." (DE-26-6).

None of these grievances deal with Dr. Myers' alleged cancellation of Mr. Gill's whirlpool treatment. Accordingly, Mr. Gill did not exhaust his administrative remedies as to this issue not because he didn't complete all five steps of the IDOC grievance process — but because he never began the grievance process on that issue.

Grievance #2005-9-665 dealt with Mr. Gill's claim that he was injured when Officer Chesley would not allow him help to get out of the whirlpool. This grievance asks for a remedy that Mr. Gill

5

could receive through the grievance process — an order that in the future he be allowed help getting in and out of the whirlpool tub. If Mr. Gill received a satisfactory response to this grievance before getting to the fifth and final stage of the grievance process, then he has exhausted his available administrative remedies as to that claim.

The defendants' submissions suggest that Mr. Gill did not receive a favorable response to this grievance before he abandoned the process. The copy of grievance #2005-9-665 the respondent submitted to the court establishes that he did not receive a favorable result in step one of the grievance procedure. According to Grievance Specialist Clark's declaration, "Gill filed a Step 2 Grievance on October 18, 2005, which was denied at step 2 on December 28, 2005." (DE 26-1 ¶ 39). Ms. Clark's "review of the offender grievance review and evaluation system shows that Gill did not submit a written appeal from the Step 2 response to Log ID Number 2005-9-665." (DE 26-1 ¶ 40). Mr. Gill responds in his sworn statement, however, that "Plaintiff['s] grievance was not denied! Plaintiff received a response back on the grievance that resolved Plaintiff['s] complaint." (DE 42 ¶ 39).

The parties have submitted conflicting sworn statements creating a disputed issue of material fact as to whether Mr. Gill received a response to his step 2 appeal that resolved his grievance. The actual step two grievance form would answer the question, but neither party submitted a copy of the step 2 appeal in grievance #2005-9-665. Accordingly, the court must deny summary judgment to Officer Chesley.

For the foregoing reasons, the Court GRANTS defendants Myers and Chesley's motion for summary judgment (docket #25) in part and DENIES it in part. The Court DENIES summary judgment to defendant Chesley. The Court GRANTS summary judgment to Defendant Myers, and DISMISSES him from this case without prejudice pursuant to 28 U.S.C. § 1997e(a).

SO ORDERED on September 13, 2007

    s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT COURT
HAMMOND DIVISION